ROBERT TEE SPJUTE, ESQ. (13866)
**SHUMWAY VAN**
8 East Broadway, Suite 550
Salt Lake City, Utah 84111
Tel.: (801) 478-8080
Fax: (801) 478-8088
E-mail: tee@shumwayvan.com
*Attorney for Defendant, Steven Chavez*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MIDWEST FLOOR COVERINGS, INC., a Utah corporation,<br><br>      Plaintiff,<br><br>v.<br><br>DORADO SOAPSTONE, LLC, a Colorado limited liability company and STEVEN CHAVEZ, an individual,<br><br>      Defendants. | **DEFENDANT STEVEN CHAVEZ'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:18-cv-465 EJF<br><br>Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

STEVEN CHAVEZ ("***Mr. Chavez***"), through his undersigned counsel, hereby respectfully moves the United States District Court for the District of Utah (the "***Court***") to Dismiss Mr. Chavez from the above-captioned civil action for Lack of Personal Jurisdiction ("***Motion***"), pursuant to FED.R.CIV.P. 12(b)(2) and DUCivR 7-1, and in support thereof, states as follows:

**GROUNDS FOR RELIEF SOUGHT**

Pursuant to FED.R.CIV.P. 12(b)(2), this Court lacks jurisdiction over Mr. Chavez because

he did not personally guaranty the obligations of Dorado Soapstone, LLC ("***Dorado***") or subject himself to the forum selection clause of agreements with Plaintiff Midwest Floor Coverings, Inc. ("***Midwest***"). Mr. Chavez does not have sufficient minimum contacts with the state of Utah. In the event that such contacts are considered sufficient against Defendant Dorado, Mr. Chavez was acting on behalf of Dorado and not in his individual capacity and is not personally subject to jurisdiction in this Court.

## FACTUAL BACKGROUND

1.     On June 8, 2018, Midwest commenced the above-captioned civil action against Dorado and Mr. Chavez (hereinafter, collectively "***Defendants***") by filing the *Complaint* within this Court [Dkt. No. 2];[1] wherein Midwest asserts claims for relief of breach of contract and unjust enrichment against Dorado and fraudulent misrepresentation against Mr. Chavez. *Id*. at pp.5-7.

2.     Pursuant to a *Request for Entry of Default* filed on July 12, 2018 [Dkt. No. 7], the Court entered the *Default Certificate* against Dorado on July 20, 2018 [Dkt. No. 9]. In addition, the Court entered a *Default Certificate* against Mr. Chavez on September 20, 2018 [Dkt. No. 17].

3.     Upon the Court entering a default against each of the Defendants, Midwest filed a *Motion for Default Judgment* against Dorado on August 17, 2018 [Dkt. No. 11] and against Mr. Chavez on October 12, 2018 [Dkt. No. 19] (hereinafter, collectively "***Rule 55(b) Motions***"). Pursuant to the Rule 55(b) Motions, Midwest seeks a judgment against the Defendants for the sum

---

[1] Unless otherwise stated, "Dkt. No. ____" refers to the docket within the CM/ECF system maintained by this Court for the above-captioned civil action; styled as, *Midwest Floor Coverings, Inc. v. Dorado Soapstone, LLC, et al.*, Case No. 2:18-cv-465 EJF ("***Civil Action***").

of $403,047.87 as the purported principal and interest "due under the fraudulently induced Promissory Note." Dkt. No. 19 at p.5; *cf.* Dkt. No. 11 at p.4.

4.   As of this Motion, the Court has yet to adjudicate the Rule 55(b) Motions.

5.   This Action stems from a distribution arrangement (the "***Venture***") by and between Midwest and Dorado ("***Business Parties***") commencing on or about January 5, 2017, pursuant to "Adjusted Purchase Order(s)" ("***PO's***"). As evidentiary support for all factual allegations enumerated hereinafter, the *Affidavit of Steven J. Chavez in Support of Motion to Dismiss* ("***Affidavit***") is attached hereto as **EXHIBIT 1** and incorporated by reference herein.

6.   Mr. Chavez holds a ninety-eight and four-one hundredths percent (98.04%) membership interest in Dorado, which is a Colorado limited liability company. Exh. 1 at p.2 (¶2). In addition, Mr. Chavez is the managing member and president of Dorado. *Ibid*.

7.   In or around December of 2016, Jeremy Burch – a sales representative employed by Dorado – visited the Denver, Colorado showroom of Midwest Floor Coverings, Inc. ("***Midwest***") located at 14550 East 38th Avenue, Aurora, Colorado 80011 ("***Denver Showroom***") and spoke with Cory Wilcox, a sales representative for Midwest ("***Introductory Meeting***"). *Id*. ¶¶4-5. At the request of Midwest, the Introductory Meeting resulted in Spencer Egan and/or Eric Parrish – Vice President and President of Midwest – meeting with Mr. Burch and Mr. Chavez at either Midwest's Denver Showroom or its corporate office located at 810 West 2500 South, Salt Lake City, Utah 84119 ("***Corporate Office***"). *Id*. at pp.2-3 (¶¶5(a)-(c).

8.   Commencing on or about January 5, 2017 through January 10, 2017, and after Mr. Burch and Mr. Chavez traveled to and from Midwest's Corporate Office within a twenty-four (24)

hour period, Midwest submitted Purchase Order No(s). 873205-DEN, 873299-DEN, 873300-DEN, 873305-SAL, 873314-SAL and 873334-DEN (hereinafter, collectively "*PO's*"). *Id*. at p.3 (¶¶5(c) -6).

9.      In addition, Dorado issued Invoice No(s). 5228 and 5229 (hereinafter, collectively "*Invoices*") to Midwest on or about January 10, 2017. *Id*. at ¶7.

10.     Dorado relied on the PO's, Invoices and communications by and between the Business Parties – through the pre-PO's meetings and post-PO's electronic mail ("*e-mail*") and telephone calls – to inform Dorado's supplier in Jiujang City, China of entering into the Venture, ordering products from Jiangxi Jingwei Stone Co., Ltd. and Loyalty Enterprise Development (Xinyang) Co. Ltd. (hereinafter, collectively "*Suppliers*"), and paying deposits to the Suppliers in the amount of $172,870.65. *Id*. at p.4 (¶¶8-9)

11.     In accordance with the PO's and Invoices, Midwest tendered the sum of $502,989.59 ("*Prepayments*") by and through three deposits from January 12, 2017 through January 20, 2017 to JPMorgan Chase Bank, N.A. Account No. ending 0938, which Dorado maintains within a branch located at 1125 17th Street, Denver, Colorado 80202. *Id*. at ¶10.

12.     By and through e-mails and telephone calls from January 11, 2017 through February 9, 2017, the Business Parties discussed – beyond purchase and sale of products – the logistics, marketing and operations of the Venture including, but not limited to, as follows:

a.      On January 15, 2017, Dorado sought to schedule "a presentation to the Midwest team…in Denver at Midwest flooring…" *Id*. at p.5 (¶11(a));

  b. On or about January 17, 2017, Dorado announced its "new distribution partnership [in the Rocky Mountain region]." *Id*. at ¶11(b). Furthermore, the mass mailing included a question and answer section that disclosed, as follows:

> **Q: At what locations will Midwest warehouse and provide Dorado/NuStone material?**
>
> **Colorado Location**
> 14550 East 38th Avenue
> Aurora, CO. 80011
>
> **Corporate Office – Utah Location**
> 810 West 2500 South
> Salt Lake City, Utah 84119

*Ibid*. (emphasis in original); and

  c. On January 27, 2017, Mr. Parrish copied Mr. Chavez on an e-mail that informed another distributor "[Midwest] just partnered with Nustone and Dorado Stone…We now have the ability to attack Multi-housing (sic) and High End Residential with one offering." *Id*. at ¶11(c).

  13. However, on or about February 7, 2017, Midwest canceled the PO's, rescinded the Venture and asserted that Dorado failing to repay the Prepayments in the entirety would be "a breach of contract as we always were under the assumption that we could cancel an order and never were informed we would lose the first portion of a deposit." *Id*. at p.5 (¶12). Although Midwest agreed to sell the goods ordered as "a special in the market place to quickly get back to whole… [Midwest] believe[d] this will be detrimental to the business of Nustone and make it difficult to control pricing and margin the future." *Id*. at pp.5-6 (¶12).

14. On February 9, 2017, Mr. Chavez responded by emphasizing his concern that Dorado would lose the trust of and ability to continue doing business with the Suppliers; and that cancelling the PO's "puts [Dorado] in a terrible cash flow position." *Id*. at p.6 (¶13).

15. Pursuant to an e-mail exchange from February 15, 2017 through March 21, 2017, the Business Parties agreed that Dorado would reimburse the Prepayments to Midwest in accordance with a payment plan set forth under an agreement, as described by Mr. Parrish to Mr. Chavez, "[j]ust like a standard bank loan…" *Id*. at ¶14. Furthermore, Midwest found that "the Note sounds like the cleanest way for both parties to stay complete" and, as drafter of the Note decided all terms and conditions including, but not limited to, rate of interest and whether I would need to sign a personal guaranty. *Ibid*.

16. Although prior e-mails demonstrate that Midwest sought a security interest from Dorado and Mr. Chavez to personally guaranty, the Promissory Note dated July 7, 2017 ("***Note***") included neither. *Id*. at ¶15; *see also* Dkt. No. 2-1, p.2.

17. From July 20, 2017 through October 23, 2017, Dorado tendered three (3) payments to Midwest in the amount of $27,943.87 for each installment, in accordance with the Note. Exh. 1 at p.7 (¶16). However, on November 15, 2017, Dorado requested to modify the payment terms of the Note for the months of November and December of 2017 and January 2018 as "Holiday season is slow so cash flow is tight." *Id*. at ¶17.

18. In response, Midwest agreed to "modify our agreement…However, I ask that the loan balance still be paid in full by the original maturity date (Dec 15, 2018)." *Ibid*.

19.     Nonetheless, Dorado's cash flow issues continued, and Midwest decided to pursue this civil action within the United States District Court for the District of Colorado against both Dorado and I prior to the December 31, 2018 maturity date arising. *Id*. at ¶18.

20.     Furthermore, Mr. Chavez does not conduct business in the State of Utah either as an agent of Dorado or in his personal capacity, has not traveled to Utah for work or personal matters other than the one-time 24-hour visit at the request of Midwest, and has never held employment with a company either formed or operating in Utah. *Id*. at pp.7-8 (¶¶19-22).

## ARGUMENT

Midwest fails to make a prima facie showing that personal jurisdiction over Mr. Chavez exists within the State of Utah. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)); *see also Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir.1986). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984)(citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

When ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(2), "[a] court may consider material outside of the pleadings." *1-800-Contacts, Inc. v. Memorial Eye, PA*, No. 2:08-CV-983-TS, 2009 WL 1586654, at *1 n. 1 (D. Utah June 4, 2009)("does not convert the motion into one for summary judgment"); *see also MMK Group, LLC v. SheShells Co., LLC*, 591

7

F.Supp.944, 957 (N.D.Ohio 2008)(quoting *Weller v. Cromwell Oil*, 504 F.2d 927, 929-30 (6th Cir.1974)("Where [a motion to dismiss for personal jurisdiction] is filed, supported by affidavits, the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction")

The Tenth Circuit Court of Appeals instructs that "[t]o obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1276 (10th Cir. 2005) (quoting *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir. 1995)). As the Utah long-arm statute "collapses . . . into the more general `due process' standard for jurisdiction…jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?" *Rusakiewicz v. Lowe,* 556 F.3d 1095, 1100 (10th Cir. 2009)(citing *Fidelity & Cas. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 442 (10th Cir.1985)).

The "minimum contacts" standard requires "that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir.2008). Therefore, Midwest must demonstrate, as follows: "(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in

the forum state ('harmful effects')." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 887 F.3d 895, 905 (10th Cir.2017).

Herein, the issue before the Court is not whether Midwest sustained injury, but whether Mr. Chavez committed "(a) an intentional action…, that was (b) expressly aimed at the forum state…, with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id*. at 907 (quoting *Dudnikov*, 514 F.3d at 1072); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

Midwest asserts that Mr. Chavez purportedly falsely represented that Dorado used the Prepayments "to order product from China on its behalf" and "never would have entered into the Note…while Dorado still had the assets to pay the amount outstanding." Dkt. No. 19-2 at p.3 (¶9). However, Midwest's justifiable reliance demonstrates a purported injury to a company operating in both Colorado and Utah; not whether Mr. Chavez expressly directed an intentional action at Utah. *See* Exh. 1 at pp.2-3 (¶¶4-5); *cf*. *Calder*, 465 U.S. at 788 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)("focuses on 'the relationship among the defendant, the forum, and the litigation"); *see also Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 103-04 (5th Cir.2018)(conduct must connect him to the forum "in a meaningful way").

To the contrary, Midwest received payments in accordance with the Note from July through October of 2017, and the Business Parties agreed to modified payment terms on November 15, 2017 due to Dorado's cash flow issues. Dkt. No. 19-2 at p.3 (¶¶12-13); *accord* Exh. 1 at p.7 (¶17). The ProFormas similarly discredit any conclusory allegation of an intentionally false statement as Dorado paid a deposit to the Suppliers for goods purchased on behalf of

9

Midwest and owed an additional $425,729.03 upon receiving the goods. *Id*. at p.4 (¶9). Furthermore, the PO's, Invoices and ProFormas indicate that Dorado exclusively conducted business in Colorado while Midwest commenced business operations in Colorado and would receive shipments at both its Utah and Colorado locations.

Put simply, Mr. Chavez could not reasonably have assumed, based on his lack of contacts with Utah, that he personally would be subject to suit before this Court. Even if this Court finds that the fiduciary shield doctrine does not apply in Utah, personal jurisdiction does not exist under the non-imputed contacts rule. *See Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir.2013)(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)(" jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him…Each defendant's contacts with the forum State must be assessed individually")); *see also ePlus Technology, Inc. v. Aboud*, 313 F.3d 166 (4th Cir.2002)(citing *Calder*, 465 U.S. at 790)("In the typical case, the contacts of a company are not attributed to a corporate agent for jurisdiction purposes"). Mr. Chavez is not a resident of Utah and traveled to Utah one-time as an agent of Dorado to discuss the Venture with Midwest. Most importantly, Mr. Chavez was neither privy to, nor a personal guarantor of the Note. *Id*. at p.6 (¶15).

Unlike the circumstances before the *Aboud* Court, Midwest fails to allege specific facts that demonstrate either Mr. Chavez fraudulently misrepresented the financial circumstances of Dorado or Mr. Chavez "organized, used, and controlled [Dorado] for the sole purpose of carrying out h[is] own business interests." *Segil v. Gloria Marshall Management Co., Inc.*, 568 F.Supp. 915, 919 (D.Utah.1983)(citations omitted). Furthermore, Mr. Chavez offers a stream of

10

communications contrary to the allegations within the Complaint, as follows: (1) Midwest caused the need for the Note by terminating the Venture after Dorado ordered the goods from the Suppliers; and (2) Midwest dictated the terms of the Note, which omits Mr. Chavez as a party or personal guarantor subject to the forum selection clause. *See* Exh 1 at pp.5-6 (¶¶12-14); *cf.* Dkt. No. 2 at p. 7 (¶39). Therefore, Midwest cannot here and now assert undocumented, ambiguous facts to create contacts between Mr. Chavez and the State of Utah. *Ibid*.

As the Note provides for no recourse against Mr. Chavez in his personal capacity, and financial hardships have precluded Dorado from fully and finally complying with the payment terms thereunder, Midwest pursues the fraudulent misrepresentation claim as an attempt to create a connection between Mr. Chavez and the Note to bring him within the purview of this Court. *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475)("to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state").However, Midwest fails to make a prima facie showing of an intentional action by Mr. Chavez that was expressly aimed at Utah.  Therefore, the Court may find that personal jurisdiction over Mr. Chavez does not exist within the State of Utah.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

WHEREFORE, Steven Chavez respectfully requests that the Court enter an Order, in the form attached hereto, dismissing Midwest Floor Covering, Inc.'s Complaint against Mr. Chavez as he does not have minimum contacts with the State of Utah to support a finding of personal jurisdiction; and that this Court grant such other and further relief as it deems appropriate and just.

DATED this 1st day of November, 2018.

                                                  **SHUMWAY VAN**

                                                  /s/ Robert Tee Spjute
                                                  ROBERT TEE SPJUTE, ESQ.
                                                  *Attorney for Steven Chavez*

## CERTIFICATE OF SERVICE

    The undersigned certifies that on November 1, 2018, I electronically filed the foregoing, **DEFENDANT STEVEN CHAVEZ'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** via the Court's CM/ECF system, which in turn affected service on all counsel of record.

Stephen M. Sansom, Esq.
Branden Christensen, Esq.
HOLLAND & HART, LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah, CO 84101

                                                    By:   *Holly Van Leeuwen*
                                                               Holly Van Leeuwen
                                                               For SHUMWAY VAN